IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CARL A. PERRY, JR.,                          :

      Plaintiff,                          :

vs.                                          :    CIVIL ACTION 02-0508-BH-C

DONAL CAMPBELL, et al.,                      :

      Defendants.                         :

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the Motions for Summary Judgment of Defendants, Donal Campbell ("Campbell") and Naphcare, Inc. ("Naphcare") (Docs. 36, 75, 76, 84), and Plaintiff's opposition thereto. (Docs. 77, 79, 80). For the reasons stated below, it is recommended that the Motions for Summary Judgment of Defendants Campbell and Naphcare be granted and that Plaintiff's action against these Defendants be dismissed with prejudice. In addition, it is recommended that Plaintiff's action against Defendant, Governor Bob Riley, be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted[1] and that

---

[1] The Court withheld service of the Complaint on Defendant Riley pending a screening of Plaintiff's claims against him under 28 U.S.C. § 1915(e)(2)(B). (Doc. 7; Doc. 31). Having determined herein that Plaintiff's allegations related to his medical treatment at Holman and St. Clair Correctional Facilities fail to establish any constitutional violation, Plaintiff's claims against Defendant Riley related to that medical treatment are due to be dismissed under § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief could be

Plaintiff's Motion for Judgment on the Pleadings (Doc. 82) and Motion for Case Status (Doc. 81) be denied.[2]

I. FACTS

1. From its review of the record, the Court summarizes the parties' allegations that are material to the issues addressed in this Report and Recommendation.    Plaintiff, an Alabama prison inmate, has been incarcerated since 1983 after being convicted of murder and sentenced to life imprisonment without the possibility of parole.  (Doc. 1 at 7, Complaint).   The events giving rise to the instant action occurred during Plaintiff's incarceration at Holman Correctional Facility ("Holman") in 2002 and 2003, and St. Clair Correctional Facility ("St. Clair") in 2004, during which time Plaintiff claims he was denied medical treatment for Hepatitis C, hemorrhoids, and sunburn/skin cancer.   (Doc. 1 at 4; Doc. 59 at 1, Amended Complaint).

2. On or around February 19, 2002, Plaintiff was given a blood test which revealed that he had Hepatitis C.   (Doc. 84, Ex. 3 at 30, Defendant's Supplemental Submission in Support of Motion for Summary Judgment).   At that time, Plaintiff asked if he was going to be treated for the disease and was advised that it "had to reach a certain stage before treatment [was]

---

granted.  See Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984) (a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.").

[2] Having determined herein that Plaintiff's allegations fail to establish a constitutional violation, Plaintiff's Motion for Judgment on the Pleadings (Doc. 82) is due to be denied, as is Plaintiff's Motion for Case Status (Doc. 81), which is moot.

necessary." (Doc. 1 at 5).

3. In January, 2004, Plaintiff was transferred to St. Clair Correctional Facility, where he began receiving interferon treatment for his Hepatitis C on November 2, 2004. (Doc. 71 at 1, Plaintiff's Notice of Objection; Doc. 84, Ex. 2 at 30, 32). Two months into the treatment regimen, Plaintiff refused to continue because of the side effects of the drug. (Doc. 84, Ex. 1 at 3-4).

4. Plaintiff complains in this action that Defendants' failure to treat him with interferon in 2002, when he was first diagnosed with Hepatitis C, as well as Defendants' failure to treat his hemorrhoids and sunburn/skin cancer, constitutes deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. (Doc. 1 at 5-6; Doc. 77 at 1-2, Plaintiff's Opposition to Motion for Summary Judgment).

## II. PROCEDURAL ASPECTS OF THE CASE

1. On July 8, 2002, Plaintiff filed his Complaint under 42 U.S.C. § 1983 against Defendants, Governor Bob Riley,[3] Alabama Department of Corrections Commissioner Donal Campbell, and Dr. Jackie Feldman, claiming that Defendants' failure to treat him for Hepatitis C, hemorrhoids, and sunburn/skin cancer constituted cruel and unusual punishment in violation

---

[3] In his Complaint, Plaintiff originally named Governor Don Siegelman and Commissioner Michael Haley as Defendants in this action. However, by operation of Federal Rule of Civil Procedure 25(d)(1), Governor Bob Riley was automatically substituted for former Governor Don Siegelman, and Commissioner Donal Campbell was automatically substituted for former Commissioner Michael Haley. The Court withheld service of the Complaint on these Defendants pending screening of the Complaint under 28 U.S.C. §1915(e)(2)(B)(ii). (Doc. 7). On April 23, 2003, the Court ordered service of the Complaint on Defendant Campbell. (Doc. 31).

of the Eighth Amendment.  (Doc. 1 at 5-6).  Plaintiff seeks monetary damages and injunctive relief. (Doc. 1 at 7; Doc. 22).

2. On August 15, 2002, the Court ordered service of the Complaint on Defendant Feldman, and, on October 11, 2002, Defendant Feldman filed her Answer and Special Report. (Doc. 7; Doc. 18).  The Court converted Defendant Feldman's Answer and Special Report to a Motion for Summary Judgment on October 21, 2002, and granted the motion on May 30, 2003, finding that there was no causal link between Defendant Feldman and the alleged constitutional violation. (Doc. 20; Doc. 33 at 7; Doc. 35).

3. On October 22, 2002, Plaintiff filed a Motion to Amend the Complaint to add Naphcare, Inc., as a Defendant.  (Doc. 21).  The Court denied Plaintiff's Motion to Amend on October 23, 2002, finding that Plaintiff had failed to demonstrate that his claims against Naphcare had any arguable basis in law.  (Doc. 22 at 2).

4. On April 23, 2003, the Court ordered service of the Complaint on Defendant Donal Campbell, who filed his Answer and Special Report on July 3, 2003.  (Doc. 31; Doc. 36).  The Court converted Defendant Campbell's Answer and Special Report to a Motion for Summary Judgment on July 22, 2003, and dismissed the action against Defendants Campbell and Riley on October 16, 2003, for failure to prosecute. (Doc. 37; Doc. 38; Doc. 40).

5. On November 7, 2003, Plaintiff appealed the Court's adverse decisions to the Eleventh Circuit Court of Appeals.  (Doc. 44).  The Eleventh Circuit affirmed the Court's decision granting summary judgment in favor of Defendant Feldman and reversed the Court's decisions dismissing Defendants Campbell and Riley for failure to prosecute and denying

4

Plaintiff's Motion to Amend the Complaint to add Naphcare as a Defendant. (Doc. 57 at 11-20).

6. On September 28, 2004, Plaintiff amended his Complaint to assert an Eighth Amendment claim against Naphcare for failure to treat his Hepatitis C, hemorrhoids, and sunburn/skin cancer. (Doc. 59). On December 10, 2004, the Court ordered service of the Complaint on Defendant Naphcare, and Defendant Naphcare filed its Answer and Special Report on March 16, 2005. (Doc. 63; Doc. 75; Doc. 76). The Court converted Defendant Naphcare's Answer and Special Report to a Motion for Summary Judgment on March 29, 2005. (Doc. 78). The Motions for Summary Judgment of Defendants Campbell and Naphcare are now before the Court.

## III. SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The <u>Federal Rules of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c)). The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).

2. However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment must be granted if the nonmoving party has failed to make a sufficient showing on 'an essential element of her case with respect to which she has the burden of proof.'" Castleberry v. Goldome Credit Corp., 408 F.3d 773, 786 (11th Cir. 2005) (quoting Celotex Corp., 477 U.S. at 323).

## IV. DISCUSSION

1. In this action, Plaintiff seeks redress for alleged constitutional deprivations pursuant to 42 U.S.C. § 1983. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (1994).

2. As stated above, Plaintiff claims that he is entitled to relief against Defendants, Commissioner Campbell and Naphcare, for their failure to provide him treatment for Hepatitis C, hemorrhoids, sunburn, and skin cancer while he was incarcerated at Holman prison in 2002 and 2003 and St. Clair in 2004.[4]  (Doc. 1 at 5-6; Doc. 59 at 1-2).  In their Answers and Special Reports, Defendants Campbell and Naphcare deny that they have violated Plaintiff's Eighth Amendment rights, and Defendant Campbell further asserts the defenses of absolute and qualified immunity.[5]  (Doc. 36 at 2, Campbell Special Report; Doc. 76 at 2, Naphcare Special Report).  For the reasons set forth below, the Court finds that Defendants' Motions for Summary Judgment are due to be granted.

A.    Denial of Medical Treatment for Hepatitis C.

---

[4] The record shows that Plaintiff was incarcerated at Holman from January, 2002, until January, 2004, when he was transferred to St. Clair. (Doc. 69; Doc. 84, Ex. 4 at 65).

[5] Plaintiff has sued Defendant Campbell in both his official and individual capacities. (Doc. 80 at 5).  As a state official, Defendant Campbell is absolutely immune from suit for damages in his official capacity.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  Moreover, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right."  Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.

3. The Court first considers Plaintiff's claim that Defendants were deliberately indifferent to his serious medical need for treatment for Hepatitis C. The record shows that, in February, 2002, Plaintiff was seen by the Holman prison physician, Dr. Robert Barnes, after complaining of headaches. (Doc. 84, Ex. 3 at 30). Dr. Barnes ordered x-rays and laboratory tests, prescribed medication, and scheduled a follow-up appointment. (Id.). At the follow-up appointment in March, 2002, Dr. Barnes informed Plaintiff that his lab tests revealed a reactive Hepatitis C virus. (Id.). At that time, Dr. Barnes advised Plaintiff that the disease "had to reach a certain stage before treatment [was] necessary." (Doc. 1 at 5).

4. For approximately two years following the initial diagnosis, Dr. Barnes monitored Plaintiff's Hepatitis C with regular examinations and lab work.[6] In February, 2002, when Plaintiff was diagnosed with Hepatitis C, his lab work revealed elevated liver enzyme levels of 127-AST (normal range 2-50) and 341-ALT (normal range 2-60). (Doc. 84, Ex. 3 at 30). Over the next two years, Plaintiff's lab work showed fluctuating, but consistently elevated, AST and ALT levels.[7] Dr. Barnes did not recommend interferon treatment for Plaintiff at any time

---

[6] The record shows that Dr. Barnes examined Plaintiff frequently during this two-year period, checking his Hepatitis C status and treating him for headaches, sunburn, skin problems, and hemorrhoids. The record reflects examinations on March 12, 2002 (Doc. 84, Ex. 4 at 63); May 16, 2002 (Doc. 84, Ex. 4 at 45); June 3, 2002 (id.); September 24, 2002 (Doc. 84, Ex. 3 at 30); November 14, 2002 (id.); January 2, 2003 (id.); January 31, 2003 (id.); February 17, 2003 (id.); March 24, 2003  (id.); April 29, 2003  (id.); June 3, 2003 (Doc. 84, Ex. 3 at 33); July 10, 2003 (Doc. 84, Ex. 3 at 17); July 24, 2003 (id.); October 16, 2003 (Doc. 84, Ex. 2 at 49); November 10, 2003 (id.); and December 15, 2003 (id.).

[7] The record shows the following laboratory results: May 17, 2002: AST-73, ALT-217 (Doc. 84, Ex. 4 at 43); November 15, 2002: AST-65, ALT-153 (Doc. 84, Ex. 3 at 66); November 19, 2002: AST-71, ALT-176 (Doc. 84, Ex. 3 at 68); and June 6, 2003: AST-230,

during this two-year period.  (Doc. 36, Ex. 1, Affidavit of Dr. Barnes).

      5.  In January, 2004, Plaintiff was transferred to St. Clair Correctional Facility.  (Doc. 84, Ex. 2 at 32).  In July, 2004, the St. Clair prison physician, Dr. M. Lawrence, began to evaluate Plaintiff for possible treatment with interferon.  (Doc. 84, Ex. 1 at 66).  Dr. Lawrence gave Plaintiff educational materials explaining the risks associated with interferon.  Plaintiff was informed that the treatment regimen would consist of multiple injections of an interferon product up to three times per week and ribavirin pills to be taken one or two times daily for six to twelve months.  (Doc. 84, Ex. 1 at 62-64).  During that time, blood tests would be administered to monitor his condition.  (Id.).  Plaintiff was also informed that it is unknown whether treatment with interferon cures Hepatitis C or prevents cirrhosis, liver failure, or liver cancer and that many patients do not respond to treatment.  (Id.; Doc. 80, Ex. 1 at 7).  It was further explained that the treatment could have serious side effects, including worsening of liver inflammation, anemia, allergic reaction, heart attack, severe depression, suicide, pneumonia, loss of vision, and thyroid disease.  (Doc. 84, Ex. 1 at 62-64).  In addition, most people taking interferon suffer flu-like symptoms including fever, headache, chills, sore muscles, fatigue, nausea, vomiting, diarrhea, and loss of appetite, and the side effects could be severe enough to result in death.  (Id.).  Ten to fifteen percent of people taking interferon cease treatment because of the side effects.  (Id.).  After being informed of the limitations and the risks of the treatment, Plaintiff consented to treatment.  (Id. at 30, 63).

      6.  On July 27, 2004, Plaintiff underwent testing to determine his particular Hepatitis

_____

ALT-520 (Doc. 84, Ex. 3 at 24).

C genotype. (Doc. 84, Ex. 1 at 41). He began treatment with the interferon products Pegasys and Copegus on November 2, 2004. (Id. at 30).

7. Within days of initiating treatment, Plaintiff reported to the chronic care clinic complaining of feeling "sluggish." (Id. at 26). On December 10, 2004, Plaintiff reported to sick call complaining of a rash, agitation, problems with his nerves, trouble sleeping, and nose bleeds. (Id. at 14-15). Plaintiff's treatment, monitoring, and lab work continued until January 19, 2005, when Plaintiff refused further treatment, stating that there were "too many side effects." (Id. at 3-4).

8. In this lawsuit, Plaintiff claims that Defendants' failure to treat him with interferon in 2002, when he was first diagnosed with Hepatitis C, constitutes deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Doc. 1 at 5; Doc. 59 at 2). The Court disagrees.

9. The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which

> inquires whether the officials acted with a sufficiently culpable
> state of mind.

Sims, 25 F.3d at 983 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)).

10. To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (internal quotation marks and citation omitted).

11. In order to meet the required subjective element of an Eighth Amendment denial of medical care claim, a plaintiff must demonstrate "deliberate indifference" to a serious medical need. Id.

> In Estelle, the Supreme Court established that "deliberate
> indifference" entails more than mere negligence. Estelle, 429
> U.S. at 106, 97 S. Ct. 285; Farmer, 511 U.S. at 835, 114 S. Ct.
> 1970. The Supreme Court clarified the "deliberate indifference"
> standard in Farmer by holding that a prison official cannot be
> found deliberately indifferent under the Eighth Amendment
> "unless the official *knows of* and *disregards an excessive risk to
> inmate health or safety;* the official must both be aware of facts
> from which the inference could be drawn that a substantial risk of
> serious harm exists, and he must also draw the inference."
> Farmer, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added). In
> interpreting Farmer and Estelle, this Court explained in

11

> McElligott that "deliberate indifference has three components:
> (1) subjective knowledge of a risk of serious harm; (2) disregard
> of that risk; (3) by conduct that is more than mere negligence."
> McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258 (stating
> that defendant must have subjective awareness of an "objectively
> serious need" and that his response must constitute "an
> objectively insufficient response to that need").

Id., 320 F.3d at 1245-46. "[W]hen a prison inmate has received medical care, courts hesitate

to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir.

1989).

12. Having considered the evidence in this case in the light most favorable to Plaintiff,

the Court finds that Plaintiff's allegations fail to establish a constitutional violation. First, with

respect to the objective element of Plaintiff's Eighth Amendment claim, the evidence is

undisputed that Plaintiff suffers from Hepatitis C, a serious, potentially life-threatening

disease. However, the question is not whether Hepatitis C is a serious disease, but whether,

during the relevant time period, Plaintiff had a serious medical need left unattended by

Defendants, which posed a substantial risk of serious harm to Plaintiff. Farrow, 320 F.3d at

1243.

13. Plaintiff's medical records show that, when Dr. Barnes first diagnosed Plaintiff with

Hepatitis C in February, 2002, he advised Plaintiff that his condition did not warrant treatment

with interferon. (Doc. 1 at 5). Over the next two years, Dr. Barnes monitored Plaintiff's

disease with regular lab work and physical examinations. (Doc. 36, Ex. 1).[8]    There is no

---

[8]  While the Alabama Department of Corrections does not have its own guidelines in
place governing the treatment of Hepatitis C (Doc. 84 at 1), there is some suggestion in the

evidence that Dr. Barnes ever altered his opinion that the status of Plaintiff's disease did not

necessitate treatment with interferon.  (Id.).

    14. In July, 2004, at St. Clair Correctional Facility, Dr. M. Lawrence began evaluating

Plaintiff's eligibility for treatment with interferon.   (Doc. 55; Doc. 84, Ex. 1 at 62).   This is

the first indication that a physician had determined that Plaintiff's medical condition had

reached the stage at which treatment with interferon should be considered.    There is no

_____

record that Dr. Barnes followed the "federal guidelines" governing the management of
Hepatitis C in the institutional setting.  (Doc. 59 at 2, 5).  Those guidelines, entitled Federal
Bureau of Prisons Clinical Practice Guidelines for the Prevention and Treatment of Viral
Hepatitis ("Guidelines"), and found at www.nicic.org/library/016972, were adopted by the
Federal Bureau of Prisons in February, 2003, and expressly state that:

> Chronic HCV infection has an unpredictable course that is
> frequently characterized by fluctuations in ALT levels that may
> or may not be associated with significant liver disease.

Id. at 39.  The guidelines recommend that inmates with a chronic Hepatitis C infection be
monitored periodically and that treating physicians assess the appropriateness of treatment
and the best timing for initiating treatment, by weighing factors, including the following:

> -Only 10% - 15% of persons with HCV infection develop
> significant long term complications of liver disease, usually
> 20-30 years after initial infection;
> - No laboratory parameters definitely predict which persons
> infected with HCV will develop cirrhosis or will respond to
> medical therapy;
> -The presence of moderate to severe fibrosis and inflammation
> and necrosis on liver biopsy are currently the best markers for
> determining who should be offered antiviral therapy for
> hepatitis C;
> -Antiviral therapy for hepatitis C is increasingly effective in
> clearing viremia and establishing sustained viral response rates
> (SVR);
> -Although current antiviral therapy is usually well tolerated,
> serious drug side effects may occur;
> -Future treatments for hepatitis C may be more effective and
> more easily tolerated.

Guidelines at 39, 41-42 (emphasis added).

evidence that Plaintiff's condition was ever "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow, 320 F.3d at 1243.

15. In a case such as this, where Plaintiff complains of delay in medical treatment, Plaintiff has the burden of establishing that he suffered a significant effect from the delay. See Hill, 40 F.3d at 1188. In Hill, the Eleventh Circuit stated that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Id. Plaintiff has failed to offer any verifying medical evidence to show that the delay in treatment with interferon until November, 2004, "pos[ed] a substantial risk of serious harm" to him, Farrow, 320 F.3d at 1243, or in any way had a detrimental effect on his medical condition. Hill, 40 F.3d at 1188. Thus, Plaintiff has failed to establish the objective element of his Eighth Amendment claim.

16. With respect to the subjective element of Plaintiff's Eighth Amendment claim, Plaintiff has likewise failed to show that Defendants were "deliberately indifferent" to his serious medical need. As noted above, Plaintiff's medical records show that, after being diagnosed with Hepatitis C in February, 2002, Plaintiff was monitored for two years at Holman prison by Dr. Barnes with frequent examinations and lab work. Plaintiff's care continued in January, 2004, at St. Clair under Dr. Lawrence, who evaluated Plaintiff's eligibility for treatment with interferon and began treatments on November 2, 2004. (Doc. 55; Doc. 84, Ex. 1 at 30). Approximately two months into the six-to-twelve-month treatment plan, Plaintiff was unable to tolerate the side effects of the interferon and ceased further treatment. (Doc. 84,

14

Ex. 1 at 3-4, 63).

17. In order to satisfy the subjective element of an Eighth Amendment claim, Plaintiff must show that Defendants, Commissioner Campbell and Naphcare, knew of and disregarded "an excessive risk to [his] health or safety." Farrow, 320 F.3d at 1245. The evidence shows, to the contrary, that Plaintiff's medical condition was never disregarded by the prison physicians but was faithfully monitored from the date of his initial diagnosis in February, 2002, until his treatment with interferon in November, 2004. (Doc. 36, Ex. 1; Doc. 84, Ex 1 at 30, 62-64). There is no evidence that Plaintiff's health was at "excessive risk" during the two and a half year period before he was treated with interferon. Indeed, as Plaintiff was counseled by Dr. Lawrence, there is significant uncertainty surrounding the efficacy of interferon treatment for Hepatitis C, and there are significant risks of serious side effects from the treatment, as evidenced by Plaintiff's inability to tolerate the treatment when given. (Doc. 84, Ex. 1 at 4, 63-64). Therefore, Plaintiff has failed to establish the subjective element of his Eighth Amendment claim.

18. Because Plaintiff has failed to establish a constitutional violation related to Defendants' failure to treat his Hepatitis C with interferon prior to November, 2004, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim as it relates to those allegations.[9]

_____

[9] The Court is aware of Naphcare's argument that it was not obligated under its contract with the Alabama Department of Corrections in 2002 and 2003 to treat prisoners with Hepatitis C. (Doc. 76 at 3; and Ex. 2). Since the record shows that Dr. Barnes repeatedly treated Plaintiff – performing examinations, lab work, and dispensing medication – the Court assumes that Naphcare's argument is directed to its obligation to

B.    Denial of Medical Treatment for Other Ailments.

19.    As with Plaintiff's claim for failure to treat his Hepatitis C, Plaintiff's claim that

Defendants denied him medical treatment for hemorrhoids, sunburn, and skin cancer is

unsupported by the record.    (Doc. 59 at 1).    Plaintiff's medical records are replete with

references to Plaintiff's treatment for those ailments.[10]

administer interferon.  However, given the absence of evidence that the failure to treat
Plaintiff with interferon during that time period had any detrimental effect on Plaintiff's
medical condition, the Court need not reach that issue.  See Hill, 40 F.3d at 1188.

    [10] 1/8/02 - given Preparation H for hemorrhoids (Doc. 84, Ex. 4 at 66);  3/12/02 -
examined by Dr. Barnes, ordered to wear cap and long sleeves (Doc. 84, Ex. 3 at 30);
5/16/02 - examined by Dr. Barnes and given medication for skin lesions and hemorrhoids
(Id.); 6/1/02 - given hemorrhoid cream (Doc. 84, Ex. 4 at 38); 6/3/02 - examined by Dr.
Barnes; skin lesion excised; medications ordered (Doc. 84, Ex. 3 at 30; Doc. 84, Ex. 4 at
45); 6/6/02 - given topical antibiotic ointment for skin (Doc. 84, Ex. 4 at 34); 6/15/02 -
prescribed cream for hemorrhoids (Doc. 84, Ex. 4 at 33); 8/9/02 - prescribed Motrin for
30 days (Doc. 84, Ex. 4 at 25); 8/20/02 - prescribed Preparation H, Anusol, and Colace  for
hemorrhoids (Doc. 84, Ex. 4 at 25-26); 9/15/02 - given cream for hemorrhoids (Doc. 84,
Ex. 4 at 23); 9/24/02 - examined by Dr. Barnes and given medication for hemorrhoids
(Doc. 84, Ex. 3 at 30; Doc. 84, Ex. 4 at 22); 10/15/02 - given Preparation H (Doc. 84, Ex. 4
at 14); 10/25/02 - given Preparation H for hemorrhoids (Doc. 84, Ex. 4 at 11); 11/1/02 -
given Preparation H; (Doc. 84, Ex. 4 at 8);11/14/02 - given Anusol suppositories and
Preparation H for hemorrhoids (Doc. 84, Ex. 4 at 3); 12/9/02 - given Preparation H for
hemorrhoids (Doc. 84, Ex. 3 at 64); 12/11/02 - prescribed Naprosyn for 14 days (Doc. 84,
Ex. 3 at 60); 1 /2/03 - examined by Dr. Barnes to check sores on head; medication given
and follow-up appointment ordered (Doc. 84, Ex. 3 at 30); 1 /24/03 - given Preparation H
(Doc. 84, Ex. 3 at 56); 1/31/03- examined by Dr. Barnes to check hemorrhoids, given
Preparation H, follow-up appointment ordered (Doc. 84, Ex. 3 at 30, 53-54); 2/17/03 -
examined by Dr. Barnes to check hemorrhoids, medication given, follow-up appointment
ordered (Doc. 84, Ex. 3 at 30, 46); 3/7/03 - given hemorrhoid cream (Doc. 84, Ex. 3 at 39);
3/18/03 - prescribed Benadryl for 30 days (Doc. 84, Ex. 3 at 37); 3/19/03 - prescribed
Diphenhydramine for 30 days (Doc. 84, Ex. 3 at 32); 3/24/03 - examined by Dr. Barnes for
hemorrhoids, prescribed sunblock and Preparation H for six months (Doc. 84, Ex. 3 at 30,
32); 4/2/03 - given Preparation H (Doc. 84, Ex. 3 at 34); 4/20/03 - given Preparation H
(Doc. 84, Ex. 3 at 35); 4/29/03 - examined by Dr. Barnes for rash, prescribed topical
antibiotic ointment for lesion on forehead, follow-up appointment ordered (Doc. 84, Ex. 3

20. Assuming, without deciding, that each these ailments constitutes a "serious medical need," Plaintiff has failed to show that Defendants were "deliberately indifferent" to any of those needs. Therefore, Plaintiff has failed to establish a constitutional violation related to Defendants' alleged failure to treat his hemorrhoids, sunburn, and skin problems, and

at 28, 30, 33); 5/6/03 - given sunblock and hemorrhoid cream (Doc. 84, Ex. 3 at 31); 6/3/03 - examined by Dr. Barnes for skin problems and hemorrhoids, prescribed Anusol for twelve days, Preparation H for thirty days, Colace for thirty days, consult with dermatologist about skin cancer on forehead (Doc. 84, Ex. 3 at 19, 33, 41); 6/25/03 - given sunblock and Preparation H (Doc. 84, Ex. 3 at 20-21); 7/10/03 - examined by Dr. Barnes for hemorrhoids and skin problems (Doc. 84, Ex. 3 at 17); 7/16/03 - prescribed vitamins for six months (Doc. 84, Ex. 3 at 9); 7/18/03 - referred to dermatologist for treatment of skin cancer (Doc. 84, Ex. 3 at 23, 27); 7/24/03 - examined by Dr. Barnes for skin problems (Doc. 84, Ex. 3 at 17); 8/18/03 - prescribed Neosporin antibiotic ointment for thirty days (Doc. 84, Ex. 2 at 48); 9/6/03 - prescribed Preparation H for thirty days, Colace for thirty days, Anusol suppositories (Doc. 84, Ex. 2 at 48, 55); 9/8/03 - prescribed Docusate stool softener for thirty days (Doc. 84, Ex. 2 at 43); 10/13/03 - prescribed sunblock (Doc. 84, Ex. 2 at 39); 10/16/03 - examined by Dr. Barnes for skin problems (Doc. 84, Ex. 2 at 49); 11/10/03 - examined by Dr. Barnes for skin problems and hemorrhoids and prescription for Anusol for twelve days, sunblock for ninety days, and Preparation H for thirty days (Doc. 84, Ex. 2 at 42, 49, 53); 12/15/03 - examined by Dr. Barnes for skin problems and prescription for sunblock and vitamins for ninety days (Doc. 84, Ex. 2 at 35, 36, 37, 49); 1/16/04 - vitamins for three months (Doc. 84, Ex. 2 at 16); 2/12/04 - sunblock for three months (Doc. 84, Ex. 2 at 16); 3/26/04 - examined by Dr. Lawrence for hemorrhoids and skin lesion (Doc. 84, Ex. 2 at 20); 4/21/04 - referred for outpatient surgery for removal of basal cell carcinoma (Doc. 84, Ex. 2 at 18); 5/3/04 - vitamins for six months (Doc. 84, Ex. 2 at 14); 5/8/04 - given sunblock (Doc. 84, Ex. 2 at 7); 6/10/04 -given sunblock for four months, topical antibiotic ointment, Motrin, consultation for removal of basal cell carcinoma (Doc. 84, Ex. 2 at 7, 10); 7/13/04 - scheduled for excision of basal cell carcinoma (Doc. 84, Ex. 2 at 18); 8/9/04 - surgery to remove basal cell carcinoma (Doc. 84, Ex. 1 at 40, 49); 8/13/04 - sutures removed (Doc. 84, Ex. 1 at 46); 9/27/04 - Pathology report showed all margins free of tumor (Doc. 84, Ex. 1 at 33, 51); 11/1/ 04 - Phenergan and sunblock for six months (Doc. 84, Ex. 1 at 9); 11/18/04 - Visine allergy eye drops (id.); 11/24/04 - Percogesic (id.); 11/1/04 - Phenergan, Tylenol, sunblock (Doc. 84, Ex. 1 at 19); 11/9/04 - allergy eye drops (id.); 12/10/04 - Benadryl, Prednisone, Decadron (Doc. 84, Ex. 1 at 10).

Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim as it relates to those allegations.

## V.  CONCLUSION

Based on the foregoing, it is recommended that the Motions for Summary Judgment of Defendants Commissioner Donal Campbell and Naphcare, Inc., be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.    In addition, it is recommended that Plaintiff's action against Defendant, Governor Bob Riley, be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted and that Plaintiff's Motion for Judgment on the Pleadings (Doc. 82) and Motion for Case Status (Doc. 81) be denied.

The attached sheet contains important information regarding objections to this recommendation.

DONE this 10th day of November, 2005.

s/WILLIAM E. CASSADY                        

UNITED STATES MAGISTRATE JUDGE

MAGISTRATE JUDGE' S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.    **<u>Objection</u>**.    Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.    Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.    *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).    The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.    The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.    The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.    It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **<u>Transcript (applicable where proceedings tape recorded)</u>**.    Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.    Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.